AIKIN *vs.* THE ALBANY, VERMONT AND CANADA RAIL ROAD COMPANY and others.

| 26 | 289 |
|----|-----|
| 90h | 29 |

The true principle, deducible from all the cases, is that words in a deed, which are not in form either a covenant or a condition, will be construed as either the one or the other, where, without such construction, the party has no remedy; while the leaning of the law against forfeitures always inclines the courts to call them a covenant, rather than a condition, where the remedy can be legally attained by such construction.

A. and wife conveyed by deed, executed by the grantors only, to the Albany Northern Rail Road Company a right of way through A.'s farm, for the rail road of the grantees, said farm lying on both sides of the strip granted. The deed contained this clause: "the said Albany Northern Rail Road Company *is to construct and maintain* two good farm crossings over said rail road," and a passage under the same, &c. The grantees accepted the deed, had it recorded, and entered into possession of the strip of land, con-

structed their rail road thereon, mortgaged their rail road, franchise, &c. and became bankrupt; and on a foreclosure of the mortgage the road, franchise, &c. were sold, and purchased by B., with notice of A.'s claim under the deed. B. sold his rights, &c. to the defendants, who entered into possession of the land granted, and were using the same for the purposes of the rail road. Neither the crossings over, nor the passage under, the rail road, were ever constructed, and by an embankment A. was cut off from all access to a portion of his farm. *Held* that the words "is to construct" imported an *obligation to construct;* and that by accepting the deed, and taking the rights under it, the grantees ratified the obligation, and in law agreed to fulfill it; the act of acceptance being as full a ratification of the agreement, and consent to its tenor, as any signing and sealing by them would have been.

*Held also* that these words were to be construed as a *condition,* which would bind the land, in the hands of the defendants; and that one remedy of the grantor for a breach, if he chose to pursue it, was by re-entry; but that this was not his only remedy. That as the defendants had seen fit to enter, and agree to have the land by force of the deed, they were bound to *perform the conditions* in the deed; and that a suit in equity to compel such performance would lie.

THIS action was tried at the circuit in Rensselaer county, in June, 1857. The facts are sufficiently set forth in the following opinion of the judge before whom the cause was tried.

*Seymour & Van Santvoord,* for the plaintiff.

*John H. Reynolds,* for the defendants.

GOULD, J. Not having before me the deed of the plaintiff to the Albany Northern Rail Road Company, I take the statement of it, given in the pleadings, to be accurate; and from it and the evidence the facts of the case are as follows: Aikin and wife conveyed, by deed executed by the grantors only, to the Albany Northern Rail Road Company, a right of way through Aikin's farm, for the said rail road company; which company was a corporation organized under the provisions of the act of the legislature, known as the general rail road act. And the description, in the deed, of the land conveyed, shows that Aikin's farm lies on both sides of the strip granted by

the deed. In this deed occurs this clause: "The said Albany Northern Rail Road Company *is to construct and maintain* two good farm crossings over said rail road;" and a *passage under* said rail road, large enough for the passing of teams with loads of hay and grain. That company received this deed, and had it recorded; entered into possession of said strip of land; constructed their rail road thereon, with an embankment over twenty feet high at the part where the passage under the road was to be made; mortgaged their rail road, franchise, &c., and became bankrupt; and on said mortgage their road, franchise, &c. were sold away from them to one Bender; on which sale, notice of the plaintiff's claim under said deed, and in and by this suit, was publicly read. Bender subsequently sold his rights, &c. to the Albany, Vermont and Canada Rail Road Company; and this company was, on motion, made a party defendant to this suit, and is now the only real defendant in the case; and is in possession of the premises granted by said deed, (using the same for the operating of its rail road,) as the grantee had been, before said mortgage sale. But neither of said companies has constructed either the crossings over, or the passage under, said rail road, named in the deed; and the plaintiff is cut off from the access to a part (60 acres) of his farm, to secure which access the specified clause was inserted in the deed. It is proved that prior to this deed the plaintiff had always been in the habit of passing with teams, in the course of his farming, to and from the lands westerly of the present rail road, nearly at the place where the passage under the rail road was to be. This suit is brought to compel the Albany, Vermont and Canada Rail Road Company *to construct* these crossings over, and this passage under, said rail road; and pay damages for not sooner constructing them, as well as the expense to which the plaintiff has been put in making the two crossings which the company failed to make, and which he was under the necessity of having.

The greater part of the argument, on both sides, has been

on the averment, by the plaintiff, that the Albany Northern Rail Road Company, in and by the said deed, *covenanted* to construct, &c.; which covenant, the plaintiff claims, runs with the land, while this defendant claims that there is no such covenant; or if there be, that it does not run with the land, but is a *collateral* covenant, binding only the covenantor. Perhaps the decision of this point may not be found absolutely essential to the determination of the suit; but it is sufficiently involved in the case to merit consideration; and the argument of it, on both sides, has been so close and elaborate as to require careful comment. And it may well be, that its examination will evolve principles decisive of the whole litigation. Now, the word "covenant" has a *technical* meaning, (it is a written agreement, signed and sealed by the covenantor,) within which it may be that, as the defendant claims, a "covenant" *cannot* be created by a *deed-poll*, as against the *grantee* therein : for, however strong his acts—of accepting the deed and taking the estate under it—may be in affirmance of his actual agreement to terms imposed on him by the deed and written in the deed, those acts do not write his name or affix his seal; and the deed, being not signed or sealed by him, is not his deed; and a covenant in it is not technically his covenant. But it does not therefore follow, that he cannot be bound to perform the terms imposed on him by the tenor of the deed.

But, for the present, granting it be a covenant—(and this reasoning I would apply as well to what I have called "terms imposed")—granting it be a *covenant*, does it run with the land? In this particular case this question is inseparably connected with the point raised by the defendant, that if a covenant, and one running with the land, it runs with the land of the *grantee,* and for *his benefit* alone ; as the plaintiff, having granted the *fee,* retains no interest in the premises to which the covenant is attached, and is to them a stranger, and can have no right to enforce the covenant. Without here stating the defendant to be, as I think he will be found to be,

Aikin *v.* Albany, Vermont and Canada R. R. Co.

wrong as to the facts, I will consider the two positions together. A covenant which is beneficial to, or binding on, the owner, *as owner,* and on or to no other person, runs with the land. While, of covenants to *do acts* on the premises, collateral covenants are such as are beneficial to the lessor, (grantor,) without regard to his continuing the owner of the estate in the premises. (5 *Barn. & Adol.* 11. 2 *Kern.* 302.) And what *Alif* does this covenant provide for? For the means of passage over—for an easement to be enjoyed upon and over—the very land granted, by the owner, as owner, not merely of the adjoining lands, but of the easement, and by no other person. And as it is to be *maintained* in repair, unquestionably binding on the owner, *as the owner* of the rail road. It is *not* a *collateral* covenant, beneficial to the grantor of the principal estate who reserves the easement by the covenant, *without regard to his continuing the owner of the estate*—the estate in the easement; which estate belongs to, and is parcel of, the estate in the farm adjoining. It cannot be questioned that *if* a covenant, it is one that runs with both the farm and the rail road land conjointly. It is an *appurtenance* to the farm, and a right in and upon the rail road land, in whosever hands they may be, and however the titles thereto may be derived. There is a *privity of estate* between the owners of the respective premises, as "the thing to be done concerns the land or estate" of both in connection, and "*that* is the medium which creates the privity between them." (3 *Denio,* 297.)

But it is said by the defendant, that *if* a covenant, it is a covenant relating to a thing not *in esse* at the making of the deed, but to be thereafter done by the grantee; and so cannot bind the *assignee* of the grantee, (the present principal defendant,) as on its face it names no assigns, and purports to be the covenant of but the Albany Northern Rail Road Company; and such a covenant does not run with the land. The cases cited by the defense state this position, in general terms. But their true purport and application here, are to be sought for in the examples and application in those cases. Thus,

while a covenant to *repair* a building, on demised premises, does run with the land, a covenant to *build* a new house, on the same premises, has been held not to do so. Here it as plain that though such new building might make the premises more valuable to the grantor, *if* he became entitled to re-enter, yet he never had any such house, nor is his estate or right in the rent in any way touched or affected, by the building or not building. Yet it is also held that where the thing covenanted for, though not *in esse*, touches or concerns the thing demised, the covenant does run with the land. (3 *Denio*, 285.) In the case on trial, is there any question that the thing covenanted for touches and concerns the very thing (*in esse*) demised—the land, including the grantor's existing way over it; that it is an incumbrance or charge upon the land, for the immediate benefit of the grantor, in the continued enjoyment of the right of way which, at the time of the grant, he had over his own land; and which, by the tenor of this covenant, he meant should remain unobstructed? His right of way was *in esse*, and it was to be improved or repaired by the grantee, (by raising the road-bed, as specified in the deed;) and the grantee was not to make a hole in an embankment not *in esse*, but to leave a road not covered by the embankment in one place, while in two others the company was so to build the embankment that it should not obstruct the way. And, in regard to the latter two, this manner of building would necessarily make them slope the sides of the embankment, and continue (either by embankment or cutting) their work on to the plaintiff's adjoining land, as a part of the "manner and form" in which they were to be at liberty to occupy and enjoy the premises granted.

But (as before intimated) the defendant's *facts* are by no means as strong as his statement. In the first place, the deed is, on its face, of a right of way, for the purposes of a rail road; and such a grant, like one for a highway, or a turnpike, is but of an *easement*, and never of the *fee* in the land; which fee is always in the grantor, subject to the easement; and

Aikin *v.* Albany, Vermont and Canada R. R. Co.

reverts, discharged of the easement, upon or by the discontinuance (by non-user or otherwise) of the way for rail road purposes. In the second place, were the deed, on its face, silent as to rail road purposes, and of an absolute fee, it could not, in law, operate as such; for the grantee is a corporation, organized for a specified particular purpose : and 1st, it is, by the very act under which it exists, authorized to take and hold lands *for rail road purposes only;* and 2dly, were the act silent on this point, the nature of its existence would, *per se,* limit its right to hold lands to the purposes of that existence : so that *it* can hold no fee simple absolute. Besides, the law requires every such corporation to *fix a period to its duration;* the charter *must expire* at a prescribed time. There is a further illustration, or rather proof, of this position, in another provision of the rail road act, by which such corporations are authorized to *alter their route,* or make a *new location,* in certain cases ; and that when, by such change, the company leaves lands that have been given " to the company," " compensation shall be made to all persons for any *injury* done" (by making the abandoned track) to lands so given : proving that these lands *revert to such persons.* Would it be pretended that, were this defendant so to change the location of this rail road as entirely to leave the plaintiff's farm, or even its present position, it could grant the *fee* of this strip of land to a *stranger ?* The fee must, from the very nature of the tenure, in such an event revert to the grantor. To hold the contrary—to concede the right to hold, or purchase, for any other than rail road purposes—would allow any rail road corporation to speculate in lands, without limitation as to quantity, or location. The merely exceptional power, to purchase an absolute fee in lots, additional to the roadway, for buildings, depots, &c., with the right, in case of a necessary change of depot grounds, &c. to sell a *fee* in such grounds and buildings, is but an exception, *ex necessitate rei;* incurring no practical difficulty in its application, and furnishing no rea-

son for changing the general rule; especially as they are not taken for the *easement*.

Again, if it be a covenant, there can be no question that it is founded on ample *consideration:* the conveyance of the premises is abundant for that purpose; even were it possible for any one to doubt that so prominent and valuable a provision was a main point, on both sides, in the negotiation and purchase.    It is by no means necessary that a covenant should contain a precise form of stating, technically, its consideration. · The whole instrument—the whole transaction—is to be taken together; its parts are not to be considered independently; especially not for the purpose of making a part fail of effect. The rule is, that no contract is to be made void by construction; or to be adjudged void, unless palpably so.    You must so construe, *ut res magis valeat, quam pereat*.

As to the preceding points, except the one as to consideration, and as to *what words* may be construed to make a covenant, or a condition, I am aware that, in *Tallman* v. *Coffin*, (4 *Comst.* 138, 139,) cited by defendants, it is said that the phrase "upon paying" is *not* a condition precedent to a surrender at a specified time; where such surrender at such time is absolutely covenanted for; and that time was after the term ended, so that by law· the party was bound unconditionally to surrender. It is not necessary for me to infringe on that decision, though I should hardly try to *extend* it beyond its exact point, as it seems to me very technical; and it plainly operated a serious hardship, very far from the "meaning and intention" of the lessee; and if it were the meaning and intention of the lessor, I am unable to avoid thinking that he took the dishonorable, not to say dishonest, course of attaining his end by appearing to say something very different from his meaning and intention.    But, however this may be, the remark of counsel, (cited in *Tallman* v. *Coffin*, from 2 *Mod.* 35,) that "paying and yielding" were never considered a condition, is in reason not supported by the *decision* of the case in *Modern Reports;* and in principle is against that decision and a variety of other au-

Aikin *v.* Albany, Vermont and Canada R. R. Co.

thorities, which expressly hold that "yielding and paying" in an indenture executed by the lessee, constitute a covenant to pay; (*Pow. Cont.* 242; 1 *Ventris,* 10; *Carthew,* 135, 232; 1 *Bac. Abr.* 530, *Covenant B; 2 Mod.* 92; *Cro. Jac.* 522, 240; *Co. Litt.* § 217, *note; Doug.* 735–7;) and *Cro. Jac.* 399, holds them a *covenant to pay* where lessee did *not* execute the lease. And that I am correct in this position, can I think be seen, by noting that the case cited in *Tallman* v. *Coffin,* from 8 *Cowen,* 296, (*Jackson* v. *McClallen,*) does not go the length for which it is so cited; since in the case last named there was an *express covenant,* covering the same subject, and to the same tenor, as the clause ("building and keeping in repair") which the plaintiff was seeking to enforce as a *condition*; and though that *decision* was, that the plaintiff's remedy must be on the *express covenant,* to prevent a forfeiture, the law always striving to avoid forfeitures; yet, while giving that decision, and while saying that "paying rent" is no *condition,* and "making up the hedge again" is not a condition, *Ch. J. Savage* says of the latter words, "*covenant* lies for not repairing the hedge;" and he adds, generally, "so similar words may amount to a condition, when without such construction the party could have no remedy; but not where there are express covenants to which recourse may be had." Which precise principle he takes directly from the case in 2 *Mod.* 35, where the question arose on an attempt by a lessor defendant, to avoid the force of his own covenant for quiet enjoyment; "that the lessee paying, &c. and performing his covenants, &c. should quietly enjoy," &c. The lessee had cut wood on the demised premises, thus committing a positive breach of his covenant not to do so; and the lessor had, therefore, disturbed the lessee's quiet enjoyment by an actual entry. The lessor, being sued on his covenant for quiet enjoyment, defended his entry on the ground that "paying, &c. and performing his covenants," &c. were a condition (precedent to, or of,) the lessee's right to enjoy; not, however, making any pretense that the rent was not paid; (so "paying," &c. are not in the case decided.) Deciding

those words to be a condition, in that case, would have enforced an actual forfeiture, consummated by re-entry; and that, too, where there was an *express covenant* affording him a full remedy. Yet, even in that case, the court said, "where without such construction the party could have no remedy, such words would amount to a *condition*," with all its consequences of *forfeiture*. The case in 8 *Cowen*, 296, plainly takes this precise ground; and in the head note, the reporter after saying, "paying, &c. do not *per se* create a condition, where there is an *express covenant* to pay," goes on, "*otherwise, it seems, where there is no remedy by covenant*."

I deem the true principle, deducible from all the cases, to be, that words not in form either a covenant or a condition, will be construed as either the one or the other where without such construction the party has no remedy. While the leaning of the law against forfeitures, always inclines the courts to call them a covenant rather than a condition, where the remedy can be legally attained by construction.

In applying this principle, it is necessary to consider the wording of the clause, in the deed in question, on which this action is founded, "the said Albany Northern Rail Road Company *is to construct*," &c., in connection with the *acts* of accepting such deed, and going into possession and constructing a rail road on the premises, under it. Had the words been "it is *agreed* that the said rail road company shall construct," could there be a doubt of their meaning? "Agreed," *ex vi termini*, means that it is the agreement of *both parties*, (whether both sign it or not,) each and both consenting to it. And the *act of acceptance* is as full a ratification of the agreement, and consent to its tenor, as any signing and sealing. To hold otherwise were to allow a grantee to perpetrate a *fraud*, to attain his own benefit, and yet "deprive the grantor of an important equivalent, which was taken into the account, in settling the terms" of the sale. (5 *Hill*, 258, 259. 3 *John. Cas.* 65. 1 *Seld.* 229.) And is there any more doubt about the words "is to construct?" They import

an *obligation to construct;* and by accepting the deed and taking the rights under it, the grantee ratified the obligation—in law agreed to fulfill the obligation. (*Cro. Jac.* 399.)

But, were it possible to say that these acts make no *affirmative contract,* there can be no possibility of saying that the land was not granted *subject to the duty* of such construction; that such duty did not enter into the *very essence of the tenure.* And, upon the hypothesis that the words cannot (in law) be a covenant, because the grantee did not execute the deed, "the party will be without remedy," unless they be construed a *condition.* As a condition, then, what is their effect? The defendant concedes such condition would *bind the land;* but says the remedy (if there be any) is to enter for condition broken. That such a remedy may be had at common law, and is appropriate, there can be no question. But is it the *only* remedy? *Littleton* (§ 374) says, of conditions binding the land, though a party "*never sealed* any part of the indenture, inasmuch as he entered and agreed to have the lands by force of the indenture, *he is bound to perform the conditions* within the same indenture, if he will have the land." And Coke's illustrations of this section show (covenants, construed by reason of a failure of one party to seal the indenture as binding on such party, entering and holding under the indenture, as covenants as well as) conditions, to *do positive acts.* Thus, A. executed an indenture of lease to D. and R., in which were a covenant to pay rent, and a covenant to pay a sum in gross; and the indenture being executed by D. but not by R., it was held not merely that *R.* was bound by the covenant to pay rent, but a suit against D. only, for the sum in gross, was (on plea in abatement) adjudged bad for not joining R. as a defendant, because he was bound by that covenant also, he having entered, &c. on the land. "He is bound to perform the condition" attached to the tenure. And it may be worth noting, that this decision really covers the ground that there may be an actual covenant, where the deed is not

executed by the covenantor—a deed which, so far as *he* is con-cerned, is a *deed-poll*.

In the case before me, a forfeiture of the estate, though fa-tal to the defendant, would be utterly inadequate to the plain-tiff's protection, and could hardly be called an equitable relief. Re-entering on an embankment twenty feet high, run-ning across the middle of his farm, where its existence is an obstruction to the very right he intended to preserve, and its removal a labor he ought not to be compelled to undertake, is hardly a remedy. And, in equity, he is entitled to what it was agreed he should have. To say that a specific performance would be inequitable, hardly lies in the mouth of this defend-ant, when this company had not merely the legal notice of the recorded deed, but actual notice, before the purchase of this claim, and not only of that, but that this suit was pending to enforce that claim. That it was originally "a hard bar-gain," which equity ought not to enforce, cannot very proper-ly be said on behalf of a party that (having the legal power to get the land, at the appraisal of commissioners, without any such condition,) saw fit voluntarily to make this precise con-tract. It was made with open eyes; and now claiming it to be burdensome, when its purport was, or *ought* to have been, perfectly apparent to the grantee and its scientific engineers, at the time of its being made, merely shows that such party is not entitled to be sheltered by the court from the conse-quences of acts done either with a reckless disregard of con-sequences, or with the intention to injure the grantor by not performing a part of the contract so essential to him. The plaintiff is, in common sense, in law and in equity, entitled to the thing for which he bargained. True, were the suit *at law*, the only remedy would be by entry for condition broken. But the plaintiff has not followed the discountenanced remedy of a forfeiture. He has not sought to enforce the penalty, but has voluntarily come into a court of *equity* to ask what may be according to good conscience. It certainly is not in the de-fendant's mouth to say that the plaintiff should be turned out

of court for not pursuing the harsher course. This court is bound, where it once acquires jurisdiction, to "chancer" away all penalties; and, with this whole case before me, and whether the clause in the deed be construed a *covenant*, or a *condition*, I see no difficulty in decreeing that "to be done which *ought* to be done." Though I am inclined to call it a *condition*, and to hold that, as the present defendant has seen fit to "enter and agree to have the land *by force of the deed, he* is bound *to perform the conditions* in the deed;" and that having so made his election, *to have the land*, he is not now to be allowed to change the election, but must abide the result.

Judgment for the plaintiff.

[RENSSELAER SPECIAL TERM, June 1, 1857. *Gould*, Justice.]