MARYLAND TELEPHONE AND TELEGRAPH CO.
*vs.* THE CHAS. SIMONS SONS COMPANY, ET·AL.

*Specific Performance—Injunction to Enforce Contract ˙by Telephone*
*Company Under Municipal Ordinance—Discretion of the Court.*

A bill to enjoin a telephone company from charging a higher rate for the
use of its telephones than that which it had agreed to charge by a con-
tract with a municipality under an ordinance, is in effect a bill for the
specific performance of the contract.

All the principles which apply to the case of a bill for specific perform-
ance apply to the case of a bill for a perpetual injunction when that in-
junction accomplishes all the objects which could be accomplished by
a decree for specific performance.

Specific execution of contracts in equity is not a matter of absolute right
in the party applying, but of sound discretion in the Court, to be exer-
cised upon a consideration of all the circumstances of each particular
case.   When to decree specific performance would be inequitable, and
would result in great injury to the defendant and be productive of little
or no benefit to the plaintiff, the decree will be refused, and the plain-
tiff will be left to his action at law for breach of the contract.

In 1896 the Maryland Telephone Company accepted the provisions of an ordinance of the Mayor and City Council of Baltimore, by which it agreed to furnish telephone service at a certain price per month to the public in consideration of the grant of the right to use the streets of the city. It was held on a former appeal that the acceptance of this ordinance constituted a contract between the city and the telephone company for the benefit of the residents of the city, which they were entitled to enforce, but that the kind of telephone service to be supplied could not then be determined ôn demurrer to the bill. Upon a remand of the cause testimony was taken which left it uncertain whether the telephone service contemplated by the ordinance was a metallic circuit or the grounded service, both of which were in use when the ordinance was passed, but it was ruled that the ordinance should be construed as requiring the most effective service then in use. After the passage of the ordinance the Maryland Telephone Company installed the metallic circuit service, and increased the charge for the same over and above that mentioned in the ordinance, and the number of its subscribers increased from about eleven hundred to upwards of seventy-five hundred. The evidence shows that the cost of operating telephones increases in rapid ratio as the number of telephones increases, and that there would be a large annual deficit if the company should furnish metallic circuit telephones at the ordinance rate to the present number of subscribers, which would result in the bankruptcy of the company. The bill in this case was filed by eighteen subscribers at the old rate asking for an injunction to restrain the company from removing the telephones from their houses or requiring them to pay the higher rates for the improved metallic service. *Held*, that since to grant the relief asked for would in all probability cause the insolvency of the company, and render it incapable of furnishing any service to the plaintiffs, and would defeat the purposes of the ordinance, the plaintiffs are not entitled to an injunction, but should be left to such remedies as they may have at law.

Appeal from the Circuit Court of Baltimore City (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, JONES and BURKE, JJ.

*Edgar H. Gans* and *William L. Marbury*, for the appellant.

*William S. Bryan Jr.*, and *J. Walter Lord* (with whom were *John Stonewall J. Healy* and *Leon E. Greenbaum* on the brief), for the appellees.

PAGE, J., delivered the opinion of the Court.

This is an appeal from a decree of the lower Court restraining the appellant from exacting or requiring of the appellees a greater rate of rental than $48.00 per annum for business telephones and service connections on a one party, double copper wire metallic circuit, central energy system, with unlimited calls, and declaring that such leases are illegal and void, so far as they provide for rates in excess of the said sum of $48 per annum; and further restraining the appellant from refusing to continue the said service so long as the appellees tender and pay therefor a rental at the rate of $48 per annum.

Many of the legal questions affecting the cause have been heard and decided in a former appeal reported in 99 Md. 142, which arose upon demurrer to the appellees' bill. We refer to the proceedings in that case, for a fuller statement of the averments of the bill, and also for the several questions that must be taken as settled here. The cause having been remanded to the lower Court for further proceedings, the appellant answered the bill, and testimony was taken by each party, and the decree was rendered, from which this appeal is taken. In its answer the appellant admits that it has charged for telephone service at the rates stated in the bill, but denies these rates are in excess of the amount it is entitled to charge; that Ordinance No. 110 was enacted as stated in the bill, and was accepted by the appellants; that it has established a large and effective telephone system in Baltimore City to over 7,000 subscribers; but it denies that the central energy system had been supplied prior to or at the time of the enactment of Ordinance No. 110, but, it is averred, an inferior system known as the trunking system, was then in general use by the company. It denies that it has charged higher rates for telephone service, such as it is now supplying. It avers that the said rates are reasonable, and that since the time of the enactment of the ordinance referred to, "ordinary" telephone equipment did not include a metallic circuit nor the central energy feature. That at that time there were only five hundred in the city, and the central energy system was unknown, and there-

fore these were not then contemplated, and it was not intended that the appellant should be prohibited from making special contracts at special rates for special or improved equipment. It admits that when it first began operations in Baltimore City, it supplied a metallic circuit, not because it was under legal obligation to do so, according to the terms of the ordinance, but "for purely business reasons," made to compete with its powerful rival, the Chesapeake and Potomac Telephone Company. It avers that this was continued long after it was financially profitable to do so.   That as the number of telephones increased the cost per telephone also increased, and it finally became impossible to supply the best service at the rates mentioned in the ordinance.   That it therefore became and was necessary to adopt a scale of charges, regulated to some extent by the number of calls per day required by the subscriber.   That the rates charged are reasonable, the highest being $72 per annum and the lowest $60, &c.

The testimony taken by both parties, shows the contracts entered into between the appellant and the appellees, the kind of service rendered by the former, the cost of supplying it per 'phone, the several kinds of equipment needed, and the financial *status* of the appellant, and the conditions existing at the time of the passage of the ordinance.

The Court in the case reported in the 99th Md., overruled the demurrer to the bill filed by the Telephone Company, and in its opinion decided as follows.

1. That there was nothing in the previous legislation of 1892, ch. 387, or in the Act of 1894, ch. 207, to prevent the appellant from making the contract, which the appellants made, to furnish the citizens of Baltimore with telephone service at the rates specified in Ordinance No. 110.

2. That the kind and description of equipment and service that was to be supplied must be sought for, not in the law theretofore existing but in the contracts that were made.

3. That by the "most natural and reasonable construction to be given or meaning to be imputed to word telephone as used in the ordinance," is the "telephone with all improve-

ments, equipments and appliances essential in its operation to make it most effective in use; and if any other construction is to be applied, it can be only after it is made to appear from all the "circumstances and conditions surrounding the parties to the contract at the time of the making of the contract that such was the intention."

4. That the design of the ordinance was to promote the public welfare, and to that extent was more than "a mere contract." That the ordinance was within the authority and power of the Mayor and City Council and that the appellant at the time had the right to refuse to accept its terms, but it cannot now object that the regulation of rates therein contained is not a reasonable one.

5. And finally that the ordinance imposed upon the appellant "a duty to the general public which the members thereof have a right to enforce against it in conditions which will show that is violating such duty."

It is contended upon the part of the appellant that the legal effect of the bill is practically to bring about the enforcement of the contract contained in the ordinance, and that therefore the principles regulating the specific enforcement of contracts must govern. The appellees claim to have the right to require the Telephone Company to furnish telephone service at $48 per annum, because of its contract with the city, as embodied in the Ordinance No. 110. The plain purpose of this bill is to secure the telephone service, at the rates prescribed, and it is sought to reach this end by an injunction, forbidding and restraining the appellant from interfering with the 'phones, and also from charging or exacting more than forty-eight dollars per annum. Should such an injunction issue it is clear, there would be accomplished everything a decree for the specific execution could effect. It would prevent the removal of the 'phones and require the continuance of the service at a rate not exceeding $48 per annum, and this being so, the bill must be taken as one for the enforcement of the contract; and therefore all the principles which apply to the case of a bill for specific performance, must be applicable here. This Court

MD. TELEPHONE CO. vs. SIMONS SONS CO. 141

Md.]                    Opinion of the Court.

in *Gurley* v. *Hiteshue*, 5 Gill. 223, said "all the principles which apply to the case of a bill for specific performance, apply with equal force to the case of a bill for perpetual injunction, when that injunction accomplishes all the objects which could be accomplished by a successful prosecution of a formal bill for specific execution." This doctrine so stated, has substantial support in many cases in this State as well as elsewhere. *Canton Co.* v. *N. C. R. R. Co.*, 21 Md. 399.

In *Strang* v. *R. R. Co.*, 101 Fed. Rep. 517, where the complainant sought to use the process of the Court to compel by indirection the specific performance of a contract to build a railroad, after citing the last-mentioned case, the Court said: "We are clearly of the opinion that it (the bill) does not show such a contract as a Court of equity can enforce by decree and failing in that, it follows that an injunction which was intended to aid the general relief sought by the bill was improperly granted." The same general principle was recognized in the case of *Ryan* v. *McLane*, 91 Md. 186–187, where this Court held that a contract which has for its main object the placing of a great corporation in the control of the complainants and his undisclosed associates, will not be specifically enforced, as being against public policy. It is settled that the "specific execution of contracts by Courts of equity is not a matter of absolute right in the party applying, but of sound discretion in the Court, to be exercised upon consideration of all the circumstances of each particular case. The Court will be controlled of course, in the exercise of its discretion by the established doctrines and settled principles upon the subject; but it does not follow, as matter of course, that because the legal obligation under the contract may be perfect, therefore the equitable power of the Court will be exercised to compel or affect specific execution." *Semmes* v. *Worthington*, 38 Md. 335.

So in the case of *Curran* v. *The Holyoke Water Power Co.*, 116 Mass. 90, where the bill was to enforce specific performance of an agreement of purchase of a parcel of land, by a party who had paid the purchase-money and entered into

possession, the Court held that his right rested in the discretion of the Court, to be exercised upon equitable considerations in view of all the circumstances, it was noted that the rights of other parties who have in good faith purchased lots * * * erected buildings, have intervened; "and although these rights are subsequent in point of time, and therefore subordinate to those of the plaintiff, yet they furnish equitable consideration to be regarded in adjudicating the rights between the parties to this suit." There is a broad distinction between the case of a plaintiff seeking a specific performance in equity, and the case of a defendant. In *McCutcheon Heirs v. Raleigh*, 76 S. W R. 51, the Court said, "if to enforce specifically an agreement would do one party great injury, and the other comparatively little good, so that the result would be more spiteful than just, the Chancellor will not require its execution." See also *St. Regis Paper Co.* v. *Lumber Co.*, 67 N. Y. S. 155. The former is not of absolute right in the party, but of sound discretion in the Court; and it will not be granted, but the party will be left to his remedy at law, when the performance has become impossible, or the decree would be inequitable under all the circumstances of the case.   2 *Story Eq. Juris.*, sec. 750 and 759; *Pomeroy Eq. Juris.*, sec. 1405, p. 2164, note 2; *Fry on Spec. Perform.*, sec. 251, note a.

The complaint of the appellees is, that the appellant refuses to furnish the appellees with telephone sevice at the rates mentioned in Ordinance No. 110, and now proposes to remove the 'phones from their places of business unless they agree to pay therefor a higher rate.   And their contention is, that the appellant has no power under the ordinance to make such higher charges for any kind of service.   On the other side, it is insisted that inasmuch as the ordinance does not describe the equipment to be furnished, for which the charge is to be made, and the words used are indefinite, the facts existing at the time of the passage of the ordinance show, that the word "telephone" was intended to include only such telephones as were operated upon the grounded circuit service—and not the me-

tallic service and the ordinance should be so construed.   But the proof shows much uncertainty upon this point.   At the time the ordinance was passed both the metallic and grounded circuits were in general use.   The Chesapeake and Potomac Telephone Company, in 1896, was the only company doing business in Baltimore City.   It had then about 2,700 subscribers of which two thousand were the grounded circuits and seven hundred were metallic.   There was some conflict in the testimony as to the efficiency of these respective methods—and there is also testimony tending to show that that company had begun the execution of a purpose of gradually converting its system to the metallic; and also that the grounded system was growing more or less obsolescent, although it was regarded as effective within a limited radius.   By letters and advertisements written to individuals and generally distributed, the appellant publicly and widely proclaimed that it was about to enter into competition with the "present local company." It offered greatly reduced rates; and in one of these public notices it stated that the equipment would include "every telephone on copper wire metallic circuit and equipped with a long distance transmitter; business telephone, $48; residence, $36." There is no evidence which shows specifically that the "telephone" referred to in the ordinance was to be one based upon any particular system, but the declarations of the appellant and the preamble of the ordinance, showed that it had in contemplation a service equal in every respect to that furnished by its rival, the Chesapeake and Potomac Telephone Company. In the view we take of the case it is not necessary to decide the matter more definitely, than this Court has already done in the decision in 99 Maryland, *supra*, that the telephone mentioned in the ordinance must be understood to mean such as would furnish the most effective service then in use.

Aside from this question, however, there are other considerations which must control this case.

There is proof that the appellant has now between seven and eight thousand subscribers, of whom there are only eighteen parties to this proceeding or who are now seeking relief of any

kind from the appellant.   .The are about 800 who are passive; and the residue have entered into the new contracts at $72 per annum.

It seems to be conceded that it is a law applicable to the telephone service that the cost per 'phone increases in rapid ratio as the number of telephones increases.  The appellant beginning business upon the passage of the ordinance in 1896, with about 1,100, finds it impossible to furnish the service at the same cost, with 7,500 subscribers, as it then did.   So that while cost per telephone to the appellant in 1901 up to 1902 was $34 per telephone, in 1902 it was $39.74, or a loss of $2 per telephone; and in the next year there was a deficiency of nearly $9 per telephone.   Mr. Webb testifies that during that year under the old rates the deficiency would amount to over $70,000, "so that at $48 and $36 a year under actual operation demonstrated by actual experience, it means $72,000 a year less than cost."   This would mean only one thing and that is, that the appellant could not find it possible to continue the service, but would speedily pass into the hands of receivers.   The counsel for the appellees while not resisting this conclusion, attempts to meet it by arguing that the service could still be supplied by deducting the alleged deficiency from the interest on the bonds.   These consist of a first issue of $1,000,000, and a second of $1,155,000 bearing interest at five per cent. issued to provide the means for constructing the plant.   All of the proceeds thereof, besides other large sums were devoted exclusively to that purpose, and the expenditure was rendered necessary to furnish the equipment necessary to meet the demand of the public.   The bonds were put on the market and sold to purchasers.   It is not contended they were improvidently issued, or that the money derived therefrom was extravagantly or even unwisely expended for any other purposes than to obtain the means of constructing plant and conducting its business, in such a manner as to enable it to compete with the other company doing business in Baltimore City.   So that the proposition asked for by the complainant is that the Court shall issue its injunction restraining

the appellant from charging more than the rates provided by its contract as expressed in the ordinance, by which great losses will be incurred by many innocent persons, and the public will be deprived of the benefits of competition in the business of furnishing telephone service, for the benefit of and on the application of eighteen persons.   By granting this injunction  each of the appellees will be nominally benefited in small amounts; but in fact the appellant may be forced into the hands of receivers, so that the service cannot be rendered at all, and the decree would eventually be of no service to them, while disaster would be brought on the corporation, and large and irreparable losses entailed upon the holders of the bonds; and thereby the very purposes for which the Ordinance No. 110 was enacted, probably entirely defeated.. Under these circumstances it is manifestly the duty of the Court to deny the injunctions prayed for, and leave the appellees to such remedies as they may have at law.

> *Decree reversed, with costs to the ap-*
> *pellants.*

(Decided February 13th, 1906.)