# PRISCILLA J. WHALEN ET AL. *vs.* THE BALTIMORE & OHIO RAILROAD COMPANY.

*Covenant by Railroad Company to Maintain Siding at Designated Place —When Such Covenant Runs With the Land—Injunction to Restrain Railroad Company From Abandoning a Turn-out and Siding —Specific Performance.*

A covenant by a railroad company to establish and maintain a turn-out and siding on or near the land of the covenantee, and to receive and deliver passengers and freight there, is not against public policy.

Such a covenant concerns the land of the covenantee, tending to enhance its value, and passes to an assignee of the same.

A railroad company covenanted in a deed, (1) To construct and maintain a turn-out and siding at a certain place. (2) To take up and set down at said siding by its passenger cars all persons going to and from the farm then occupied by the covenantee. (3) To leave at said siding to

be unloaded, any car on which articles of a certain weight should be loaded for the covenantee, and on which the cost of transportation shall have been paid.  *Held*, that the first and second covenants are real covenants, running with the land and inure to the benefit of the assignee of the land, but that the third covenant is personal to the original parties, and cannot be taken advantage of by an assignee.

Sixty years ago, the Balto. & Ohio R. Co. located its road-bed on the south side of the Patapsco river at a place where the river bends its course sharply.  At that time the railroad company covenanted with the owner of the land at the extremity of the curve to maintain a siding at that point.  Recently, for the purpose of straightening and shortening its road, the company built a cut-off crossing the river twice above this bend, and abandoned the use of the former tracks.  A siding serviceable for the plaintiff could not be established on the new route. Upon a bill by the assignee of the land of the original covenantee for an injunction to restrain the railroad company from failing to maintain the siding, and from neglecting to run at least some cars over it, *held*, that, since the injunction asked for would effect the purpose of a decree for specific performance, the principles regulating such decrees are applicable, and it is a rule that specific performance cannot be demanded as a party's absolute legal right, but is a matter resting in the discretion of the Court, to be granted or refused according to the equities of each case.

*Held*, further, that since the public interest, as well as the pecuniary advantage of the railroad company, requires that it should be enabled to shorten and straighten its line of road, the plaintiff is not entitled to require the company to maintain a train service over the abandoned route, on account of said covenant, since it would impose upon the company an unreasonable burden, out of all proportion to the benefit to be received by the plaintiff in having a siding near his farm, and that the plaintiff is remitted to an action at law to recover such damages as he may show himself to be entitled to on account of defendant's breach of the covenant.

*Decided April 1st, 1908.*

Appeal from the Circuit Court for Howard County (Rogers and Thomas, JJ.)

The deed referred to in the opinion of the Court is as follows:

·This Indenture made this 5th day of May, in the year of our Lord, 1848, between Thomas B. Dorsey and Milcah Dorsey, his wife, of Howard District of Anne Arundel county in the State of Maryland of the first part and The Baltimore and Ohio Railroad Company of the second part.

Witnesseth, that the said parties of the first part for and in consideration of the sum of twelve hundred dollars current money, to them in hand paid by the said Baltimore and Ohio Railroad Company at and before the sealing and delivery of these presents, the ·receipt whereof is hereby acknowledged, have granted, bargained and sold, aliened, enfeoffed and conveyed and by these presents doth give, grant, bargain and sell, alien, enfeoff, release, convey and confirm unto the said Baltimore and Ohio Railroad Company, its successors and assigns, all that lot or parcel of land in Howard District of Anne Arundel county occupied by the Baltimore and Ohio Railroad which is contained within the outlines of the following description, that is to say:

(Then follows a ·description of the right of way by metes and bounds, which is omitted.)

Together, with all and singular the rights, members, privileges, advantages and appurtenances to the same belonging or in anywise appertaining:   To have and to hold the pieces or parcels of land above-described with the appurtenances unto the said Baltimore and Ohio Railroad Company, its successors and assigns, to the only proper use and behoof of the said Baltimore and Ohio Railroad Company, its successors and assigns forever; and this indenture further witnesseth that for and in consideration of the payment aforesaid, the parties of the first part hereto have released, and do hereby release, acquit, exonerate and discharge the said parties of the second part, from all obligations to construct or maintain turnouts and sidings under any contract or agreement heretofore made between the said parties of the first and second parts, except the turnout and siding hereafter mentioned and provided for, and for the same consideration do give to the said parties of the second part, the railroad car now owned by the said parties of the first part, and all the wood belonging to the said parties of the first part and growing upon the land to be occupied in changing the location of the Baltimore and Ohio Railroad according to the plan now in progress.   Together with the privilege of procuring the necessary filling and stone from the lands of the said parties of the first part, in the vicinity of said railroad for making the embankments, culverts and walling in such alterations.   And this indenture further witnesseth that the said parties of the second part do hereby covenant and agree in consideration of the premises to and with the said parties of the first part their heirs and assigns

to construct and maintain a turnout and siding at Dorsey's run on the main stem of said railroad; to take up and set down at said siding by the passenger cars of said company all persons going to and from the farm now occupied by the said parties of the first part and to leave at said siding to be unloaded any car in which any article or articles weighing at least three thousand pounds shall be laden for the said parties of the first part and on which the cost of transportation shall have been paid at the place of lading. And the said parties of the second part further covenant and agree to construct a crossing place over the said main stem at a convenient distance from the culvert over McKinsey's branch. And this indenture further witnesseth that the Baltimore and Ohio Railroad Company have constituted and appointed and do hereby constitute and appoint Howard Swain of the district aforesaid to be their attorney for them and in their name and as their act and deed to acknowledge this indenture before any person or persons having authority by law to take the said acknowledgment in order that this indenture may be duly recorded.

In testimony whereof the said parties of the first part have hereto set their hands and seals, and Louis McLane, President of said company, hath hereto set his hand and caused the corporate seal of said company to be hereto affixed on the day and year first above written.

(Signed, sealed, witnessed and acknowledged.)

The cause was argued before BOYD, C. J., BRISCOE, PAGE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*Bernard Carter* and *Edward M. Hammond,* for the appellants.

*Jas. A. C. Bond* and *Francis Neal Parke,* for the appellee.

WORTHINGTON, J., delivered the opinion of the Court.

The appeal in this case was taken from an order of the Circuit Court for Howard County, sitting as a Court of equity, sustaining a demurrer to a bill of complaint filed in that Court by the appellants against the appellee, for the purpose of obtaining an injunction to restrain the appellee from neglecting and refusing to properly maintain a turnout and siding et Dorsey's run in Howard County; and from neglecting and

refusing to maintain and run a reasonable train service of pas-
senger and freight by or over said Dorsey's run siding; and
from neglecting and refusing to take up and set down at said
siding, by the passenger cars of defendant company, all per-
sons going to and from the farm of the plaintiffs; and from
refusing or neglecting to leave at said siding, to be unloaded;
any car in which any article or articles weighing at least 3,000
pounds shall be laden for the plaintiffs, and on which the cost
of transportation shall have been paid at the place beginning.

The bill was filed June 17th, 1907, and sets forth, as the
grounds for its prayer for this relief, that on May 5th, 1848,
the defendant entered into an indenture with a certain Thomas
Beale Dorsey, formerly for many years a member of this
Court, and Milcah Dorsey, his wife, wherein the defendant
covenanted and agreed with the said Dorsey and wife, and
with their heirs and assigns to construct and maintain a turnout
and siding at Dorsey's run on the main stem of said railroad,
and also to do certain other things which in the prayer of said
bill it is prayed the defendant may be enjoined and restrained
from neglecting and refusing to do.

The bill further alleges that the plaintiffs have become, by
mesne conveyances, enfeoffed and seized of a large part of the
land owned by said Dorsey and wife at the time of the execu-
tion of said indenture, and that they are, as the assigns of said
Dorsey and wife, entitled to enjoy the fruits of the covenant
therein before recited; the said covenant, as is alleged, being
a covenant running with the land.  That the defendant was
then at the time of the filing of the bill of complaint, con-
structing a cut-off on the main stem of its railroad, over which
it would, when completed, run its passenger and freight trains,
and thus divert all passenger and freight trains from that part
of its line which theretofore had passed Dorsey's run at the
siding and turnout, which up to that time had been main-
tained and operated by said railroad company under the pro-
visions of said covenant.

That the plaintiffs being advised of the intended abandon-
ment of Dorsey's run turnout and siding, communicated with

the defendant and called its attention to the covenants in said indenture contained, to which communication the defendant replied that it would abandon said turnout and siding, but would hold itself in no way liable for a breach of said covenants; because as it claimed it was immune from liability for a breach thereof.

The bill further alleges that by the change of the location of the road bed of said defendant company, there would be no turnout or siding on the property of the complainants at Dorsey's run, and that they would be entirely without the passenger or freight service from said defendant, which the defendant has covenanted to give the complainants as assignees of said Dorsey.

That when the complainants purchased the property mentioned, the fact of having a station on their property at which the freight and passenger trains of the defendant stopped, was an inducement and a consideration for them to purchase the said property, and that they were advised at the time of said purchase that said covenant was one running with the land, and could not be broken by said defendant company.

That the complainants were advised, and therefore charge that no monetary compensation could recompense them should the defendant be allowed to violate its said covenants, and that a breach thereof would work a great depreciation in the value of the land belonging to them for which they would have no adequate remedy at law.

That it was not unreasonable to ask the railroad company to run and maintain a certain number of trains, passenger and freight, over its right of way passing by said Dorsey's run, and to maintain the turnout and siding covenanted by the defendant company to be maintained there, nor would such request be impossible of performance.

The bill further alleges that the defendant has not abandoned the property of the complainants entirely, but that its tracks were still on the property of complainants for a considerable distance.

That should the defendants be permitted to violate their

covenants, that the nearest station to the complainants would be Hollofields, which was distant three miles, whereas from the residence and property of the complainants to Dorsey's run turnout and siding was but one quarter of a mile.

The bill also alleges in its sixteenth paragraph, "That from .the nature of the topography of the ground and situation whereon the new line of railroad would run, it would be impossible to construct and maintain a turnout and siding which would be accessible to the complainants." The prayer of the bill for specific relief, is substantially as herein before set out, and there is also the usual prayer for general relief. With the bill was filed a copy of the deed to Priscilla J. Whalen, one of the complainants, for 567 acres, being a part of 2,200 acres of land owned by JUDGE DORSEY at the time of the execution of the above mentioned indenture; also a plat of the whole tract showing the location of Dorsey's run station, and of the so called new "cut off" of the railroad, and also a copy of the indenture entered into between the railroad company and JUDGE DORSEY in 1848.

The indenture is set out in the report of this case preceding this opinion. The legal principles involved in this appeal, all of which' were elaborately argued by able counsel on both sides, and all of which are sufficiently involved in the case to require careful consideration, may be appropriately considered under three heads: First. Was the covenant, or rather were the covenants (for while one in form, the covenant involved in this proceeding embraces several undertakings), contained in the indenture of May 5th, 1848, originally valid and binding on the defendant, or void as against public policy? Second: If originally valid as between the parties, are they such covenants as run with the land in favor of the plaintiffs as assignees of Dorsey?

Third: If valid, and if they enure to the benefit of the plaintiffs, are the plaintiffs entitled to have the agreement specifically enforced?

1st. As to the first proposition we think the covenants were valid, and binding on the defendant at the time they were en-

tered into, and capable then of being specifically enforced so far as the facts are disclosed by the record.

In *Green* v. *West Cheshire Ry. Co.*, 13 Law Rep. Equity Cases, 44, a contract by the defendant railroad company to construct a siding upon plaintiff's land along side the railroad tracks, was specifically enforced. In *Lydic* v. *B. & O. R. R. Co.*, 17 W. Va. 427, a right of way through land was granted to the railroad company, and a verbal agreement was made by which the railroad company promised to put in a switch at a certain mill, and stop its trains at the switch. The Court *held,* because the agreement was verbal, it did not run with the land, but distinctly stated that, if it had been in writing under seal, it would then be a covenant running with the land and capable of being specifically enforced in equity.

In *Aiken* v. *Albany R. R. Co.*, 26 Barb. 289, the railroad was required to construct and maintain crossings over or under its tracks for the benefit of the farm land on each side, in pursuance of an agreement to that effect in a deed from the landowners, to the railroad company. See also *Murry* v. *Northwestern Ry. Co.*, 64 S. C. 520, and *Lawrence* v. *Ry. Co.*, 36 Hun. 467; *Pittsburg, etc., Ry. Co.* v. *Reno*, 123 Ill. 273.

The case of *Sapp* v. *Northern Central Ry. Co.*, 51 Md. 124, cited by the appellees, is distinguishable from these. In this latter case the Court was dealing with a question involving the right or power of a railroad corporation to grant or create an easement for persons to walk *along its tracks or by the side of them.*

As the exercise of such a power, if permitted, would be subversive of the very purpose of the railroad's creation, it was held that the corporation possessed no such power.

In the case at bar we find nothing unreasonable or impracticable for the railroad to perform, contained in the covenant, as originally entered into, and nothing on the ground of public policy to forbid or prevent its execution at the time.

We think there is a manifest distinction to be made between covenants to establish and maintain stations for the public con-

venience, and those to establish and maintain sidings, turn-outs, crossings and the like, for private use merely.   The former are generally condemned as against public policy, while the latter are to be governed by the circumstances of each particular case.   *Fuller* v. *Dame*, 18 Pick. 472; *Texas & P. R. R.* v. *Marshall*, 136 U. S. 393; *Same* v. *Scott*, 41 U. S. App. 624; 37 L. R. A. 94–98; *Marsh* v. *Fairburgh Ry. Co.*, 64 Ill. 414; *Northern Pacific* v. *Washington*, 142 U. S. 492; *Lydic* v. *B. & O. R. R. Co.*, 17 W. Va. 427; *Aiken* v. *Albany R. R. Co.*, 26 Barb. 289; *Green* v. *West Cheshire Ry. Co.*, 13 L. R. Eq. Cases, 44, *Gilner* v. *Mobile Ry. Co.*, 79 Ala. 569.

2nd. The next question is, do the covenants run with the land in favor of the plaintiffs in this case?

By referring to the covenant it will be seen that the railroad company agreed to "*construct* and *maintain*" a turnout and siding at Dorsey's run on the main stem of said railroad, and to do certain other things connected therewith; and the agreement is made not only with the original grantors, but also with "their heirs and assigns."

In *Spencer's case*, reported in 5 Coke, 16, and also found in 1 *Smith's leading cases* (9 ed.), at p. 174, the question as to what covenants run with the land and what do not, was fully considered by the whole Court, and it was resolved in that case that when the warranty is made to one, his *heirs* and *assigns*, by express words, the assignee shall take the benefit of it, even though the covenant extend to something not then *in esse*, provided the thing to be done, touch and concern the land.

The action in Spencer's case was between a lessor and the assignee of the lessee, but the principles enunciated therein, have been held applicable to covenants between grantor and grantee, and their assigns, in very many modern cases.

In *Green* v. *Canby*, 24 Md. 127, the Court said: "The established doctrine is that a covenant to run with the land must extend to the land so that the thing required to be done will affect the quality, value or mode of enjoying the estate conveyed, and thus constitute a condition annexed or appurte-

nant to it; there must also be a privity of estate between the contracting parties, and the covenant must be consistent with the estate to which it adheres, and of such a character that the estate will not be defeated or changed by a performance of it.''

In all cases covenants conferring benefits will run with the land where the rights conferred are of such a character as to attach to the land and pass as incidents thereto. 11 *Cyc.*, 1089.

The question as to whether the covenant runs with the land does not depend on its being performed on the land itself, but its performance must touch and concern the land, or some right or easement annexed or appurtenant thereto, and tend necessarily to enhance its value or render it more convenient or beneficial to the owners or occupants. 11 *Cyc.*, 1081.

A covenant which does not touch and concern the land, as above indicated, is called a personal covenant, and binds only the covenantor, and can be taken advantage only by the covenantee. 2 *Black Com.*, 304; *Bouvier's Law Dictionary*, title, ''Personal Covenant.''

In the deed from JUDGE DORSEY and wife the railroad company expressly covenants to do three things, which are involved in this controversy;

1st. To construct and maintain a turnout and siding at Dorsey's run.

2nd. To take up and set down at said siding by the passenger cars of said company all persons going to and from the farm then occupied by the grantors.

3rd. To leave at said siding to be unloaded any car in which any article or articles weighing at least 3,000 pounds should be laden for the grantors, and on which the cost of transportation has been paid at the place of lading.

Tested by the aforegoing general principles the third covenant seems to us to be a personal one, while the first and second are covenants real and enure to the benefit of the plaintiffs as assignees of Dorsey and wife.

3rd. We come then to the third general head into which the consideration of the case has been divided, that is, are the

plaintiffs entitled to have the covenants which run with the land and enure to their benefit specifically enforced?

There can be no doubt as to the right of the railroad company to change for the purpose of carrying out the object of its creation, the location of its main stem.

A railroad is in many essential respects a public highway, and the rules of law applicable to one are generally applicable to the other. *Fuller* v. *Dame*, 18 Pick. 472.

The counsel for the appellees very well say in their brief, "that a railroad company is a public service corporation, and is obliged to use its powers and privileges for the benefit of the public, and in aid of the public good. It must therefore, from time to time, conform to the requirements of public travel and commerce, and adjust its grades, its route and its curvatures to these needs. No contract on its face can interfere with these public duties.

"To compel a railroad company to maintain its main stem on the old location for ever is to render it impossible for the corporation to ever make in conformity with its own needs and the public's interests, any change in its transportation route."

It appears from the blue print filed with the record in this case, that the main stem of the defendant company where it passed through the lands of JUDGE DORSEY was, at the time of the execution of the indenture in question, located along the south side of the Patapsco river.

This river which flows a generally easterly course, at that part of it which passes nearest to the mansion house and former residence of the late JUDGE DORSEY, takes a short turn to the south, and then after flowing a short distance turns again to the north and east, forming at this point a loop or curve very much in the shape of the letter U with the open part of the letter toward the north. JUDGE DORSEY's late residence is located about one-quarter of a mile south of the river at this point, and Dorsey's run and siding was located on the line of the old railroad near the south bend of the U shaped curve thus formed.

For the purpose of straightening its line and bettering its

road bed and train service, a cut off was made across the upper part of this U shaped curve in the river, crossing the river twice; and the main stem of the railroad was relocated along this cut off, thus eliminating the sharp curve in the road at Dorsey's run, and leaving the turnout and siding, formerly established, about one quarter of a mile to the south, and on the opposite side of the river.

The bill of complaint alleges, "that from the nature and topography of the ground and situation whereon the new line of railroad will run, it is impossible to construct and maintain a turnout and siding which will be accessible," to the complainants.

The bill also avers that it is not impossible of performance or unreasonable to ask the defendant still to run a certain number of passenger and freight trains daily over its line passing by Dorsey's run, and still to maintain the turnout and siding at that place, as a reasonable compliance by the defendant with the terms of the covenant.

Whether it would be a reasonable requirement to compel the defendant to still run a certain number of trains daily, both passenger and freight, over the old abandoned route passing Dorsey's run, in addition to the train service required over its main stem as now located, is a question for the Court to determine from all the circumstances of the case, and is not to be taken as admitted by the defendant's demurrer. The demurrer admits the truth of the facts alleged in the bill so far only as they are relevant and well pleaded; conclusions of law deduced by the pleader, and theories as to the effect of the facts are not admitted by the demurrer. *Miller's Equity*, sec. 133; *Felix* v. *Patrick*, 145 U. S. 333.

There can be no doubt of the right and power of the directors of the railroad company to make the cut off and change the location of its main line as indicated on the blue print, for the purpose of straightening its lines and reducing its grades, and thus improving its service to meet its obligations to the public, and also to increase its earning capacity for the benefit of its stockholders.

. As was said in *New Central Coal C.* v. *Georges Creek Coal and Iron Company*, 37 Md. 564, "the managers or directors of the corporation are the sole judges of what is proper or convenient, as well with reference to location, as to the execution of all other powers granted, as a means of attaining the object of its charter."

The injunction prayed for in this case would, if granted, accomplish all that a decree for specific performance could effect, and, therefore, all the principles which apply to the case of a bill for specific performance apply with equal force to the case of a bill for perpetual injunction, when that injunction accomplishes all the objects which could be accomplished by a successful prosecution of a formal bill for specific execution. *Maryland Telephone Co.* v. *Simons Sons Co.*, 103 Md. 141.

Specific performance is not a matter of absolute right in the party, but of sound discretion in the Court, and it will not be granted, but the party will be left to his remedy at law when the performance has become impossible, or the decree would be inequitable under all the circumstances of the case.

Bearing in mind these general principles, and considering all the allegations of the bill of complaint, which are well pleaded and which by the demurrer are admitted to be true, together, we think that to require the defendant to still maintain a train service over its now abandoned line past Dorsey's run, as is sought to be accomplished by the prayer of the bill, would impose upon the defendant an unreasonable burden wholly out of proportion to any benefit that would thereby accrue to the complainants. The railroad company appears to have faithfully complied with its covenant for nearly sixty years, and so long as its main line remained on the former location, it could perhaps have been compelled to comply therewith, but the very purposes of its creation forbid that it should be tied to the same location forever.

Whether the plaintiffs are entitled to compensation in damages for the abandonment by the defendant of the turnout and siding, and train service, so long maintained by the appellee at that place, this Court is not called upon now to determine,

but we are all of the opinion that the relief prayed for in the bill of complaint must be denied and that the appellants must be left to seek redress for any injury which they may have sustained by such abandonment, in a Court of law. The order appealed from will be affirmed and the bill dismissed without prejudice to the plaintiff's right to sue at law.

> *Order affirmed and bill dismissed with costs to the appellee.*