643 A.2d 476

**Nicholas READ, et al.**

v.

**MONTGOMERY COUNTY, Maryland.**

**No. 757, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

June 29, 1994.

Tracy E. Mulligan, Rockville and William G. Dansie, Washington, DC, for appellants.

Diane R. Schwartz Jones, Associate County Atty. (Joyce R. Stern, County Atty. and A. Katherine Hart, Sr. Asst. County Atty., on the brief), Rockville, for appellee.

Argued before BISHOP, BLOOM and CATHELL, JJ.

BISHOP, Judge.

Appellants, Nicholas Read and twenty-nine similarly situated property owners, filed a complaint in the Circuit Court for Montgomery County against appellee, Montgomery County ("the County"), seeking a decree to quiet title, under claims of adverse possession, to several parcels of real estate. The County filed a motion to dismiss, which the trial court denied. Thereafter, appellants filed a motion for partial summary judgment and the County filed a motion for summary judgment. The trial court granted the County's motion and appellants filed a timely notice of appeal to this Court.

## Issues

Appellants raise two issues, which we rephrase as follows:

I. Whether an interest in land, owned by a railroad company, may be acquired by adverse possession or prescriptive easement.

II. Whether the affidavit on which the County relied to present material facts should have been stricken.

## Facts

At the heart of this dispute is a railroad spur, known as the Georgetown Branch Right-of-Way ("Georgetown Branch"), which extends approximately 6.4 miles from Lyttonsville to the District of Columbia. The Georgetown Branch has been in existence since 1892 and, allegedly, had been used for railroad purposes until 1986. The Georgetown Branch varies in width, generally, from sixty-six feet to ninety feet, depending upon the location. One portion of the Georgetown Branch, however, extends 225 feet across to accommodate a trestle that crosses Rock Creek.

In December 1988, the Interstate Commerce Commission issued to the County a Certificate of Interim Trail Use pursuant to 16 U.S.C. § 1247(d). Thereafter, the County purchased and, by quitclaim deed dated December 16, 1988, acquired the Georgetown Branch from the Metropolitan Southern Railroad, Washington, The Western Maryland Rail-

road Company, and CSX Transportation, Inc. ("the Railroads"). The County maintains that the Georgetown Branch was purchased for the express purpose of constructing a light rail facility between Silver Spring and Bethesda and a hiker/biker trail between Silver Spring and the District of Columbia–Maryland border.

Appellants, who own lots that abut portions of the Georgetown Branch, assert that they erected fences and sheds and planted bushes and trees on portions of the land owned by the Railroads, and thereby acquired title to this land through adverse possession:

> What we are saying, obviously, is that Montgomery County bought by quitclaim deed and they did not purchase what they could not have purchased through that quitclaim deed, and that is these portions that the families have been maintaining, building structures on for a period—in every case, far more than 20 years.

The County contests appellants' position, stating that:

> the entire right of way is impressed with a public trust, it is not the track area. You have before you both the original affidavit and the amended affidavit of David Lancaster, who was a railroad official. He indicated that the entire width of the right of way was needed for cut and fill, so that the track would be level and that it was needed for slope to support the tracks, it was needed for drainage, it was needed for grading, and that the entire width of the right of way was necessary. . . .

Both parties dispute whether the portion of the Georgetown Branch, to which appellants claim title, was necessary for the safe operation of the railroad. Appellants, through their civil engineering expert, Neal Fitzsimons ("Mr. Fitzsimons"), assert that the American Railway Engineering Association recognizes that a clearance of nine feet six inches, on either side of the track, is adequate for railroad operations. Appellants also assert that "[o]ver the past 50 years the railroad had repeatedly conveyed parcels of its recorded right of way to various parties" and that "[t]hese conveyances established that

the railroad required no more than a 32′ right of way for operation i.e., an area of 16 feet on either side of the track over the land in close proximity to and with similar characteristics to the subject property."

The County responds, however, that Mr. Fitzsimons's deposition testimony demonstrates that a railroad right-of-way is customarily between sixty-six to 100 feet wide:

> Well, classically, I know that right-of-ways are 66 feet wide, or 100 feet wide, and that's—so I mean, I didn't know specifically what this was, but from my past experience, they were normal right-of-way widths. Sixty-six feet being the length of Gunter's chain[, a standard linked type of measuring chain surveyors used to measure rights-of-way].

In addition, the County relies upon the affidavit of David Lancaster, a vice-president of CSX Realty, which indicates that the sixty-six foot right-of-way that the County purchased from the Railroads "includes track area, road bed, lateral support, graded areas and safety buffer areas. The right-of-way was acquired and retained at this width to provide appropriate slope and lateral support for the tracks and to allow for the safe and efficient operation of trains."

### Discussion

### Standard of Review

Rule 2–501(e) provides that "[t]he court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." In *Waller v. Maryland Nat'l Bank,* 95 Md.App. 197, 209–10, 620 A.2d 381, *rev'd on other grounds,* 332 Md. 375, 631 A.2d 447 (1993), we stated that the summary judgment procedure

> "is not a substitute for a trial, but a means by which the trial court may determine, summarily, whether a trial is necessary." In reviewing a disposition by summary judgment, we must decide whether a material factual issue exists, and in doing so, will resolve all factual inferences

against the moving party. A material fact is one which will affect the outcome of the case in some way; therefore, "a dispute over a nonmaterial fact will not preclude summary judgment." In addition, the party opposing the motion for summary judgment "must proffer material facts which would be admissible in evidence." When the moving party has set forth sufficient grounds for summary judgment, the opposing party must demonstrate, in some degree of detail, that there is a dispute as to a material fact. General denials and allegations are insufficient to defeat a motion for summary judgment. Finally, if there are no material factual disputes, then we must decide whether the trial court was legally correct because the trial court decides issues of law, not fact, when granting summary judgment.

(Citations omitted). With these principles in mind, we turn to the case *sub judice*.

## I. Introduction

The trial court granted the County's motion for summary judgment on the following grounds:

that the Georgetown Branch Right-of-Way described in the Quitclaim Deed ... is a public right-of-way which cannot be acquired by adverse possession; and ... that the Right-of-Way acquired by Montgomery County has not been abandoned; and ... that Montgomery County ... is the owner, pursuant to the Quitclaim Deed, of the portions of the Right-of-Way claimed by Plaintiffs.

The trial court, unfortunately, did not elaborate upon its findings. The trial court's statement that the Georgetown Branch is a public right-of-way, which cannot be acquired by adverse possession, imprecisely states Maryland law and fails to take into account the County's admission that "portions of the right of way that were acquired by the county, portions are held as easements and portions are held in fee simple [by the Railroads]." To provide the necessary backdrop for a discussion of the case *sub judice*, we shall distinguish between property held by a railroad company as an easement and property held by a railroad company in fee simple.

## II. Railroad's Fee Simple Interest in Right-of Way

Appellants ask whether title to portions of land owned by a railroad company may be acquired through adverse possession. The textbook answer is "yes." "A railroad is in many essential respects a public highway, and the rules of law applicable to one are generally applicable to the other." *Whalen v. Baltimore & Ohio R.R.,* 108 Md. 11, 21, 69 A. 390 (1908). In *Whalen,* the Court of Appeals accepted the appellees' definition of a railroad as a " 'public service corporation, [which] is obliged to use its powers and privileges for the benefit of the public, and in aid of the public good.' " *Id.* In the case *sub judice,* the County asserts that, because the Railroads operated and used the Georgetown Branch for the benefit of the public, the Railroads acted as a quasi-public corporation, functioning to promote the public welfare. We agree with this characterization.

■ "The elements of adverse possession are that the possession must be actual, hostile, open, notorious, exclusive, under claim of title or ownership, and continuous and uninterrupted for twenty years." *East Wash. Ry. v. Brooke,* 244 Md. 287, 294, 223 A.2d 599 (1966). "Quite likely nothing is more solidly established than the rule that title to property held by a municipal corporation in its governmental capacity, for a public use, cannot be acquired by adverse possession." *Seijack v. Mayor of Baltimore,* 270 Md. 640, 644, 313 A.2d 843 (1974). This is so because property that is held in a governmental capacity is impressed with a public trust and dedicated to public use. *See id.* at 645, 313 A.2d 843. "Less frequently encountered, however, although apparently as well established, is the notion that *municipal property not devoted to a public use can be so acquired." Id.* at 644, 313 A.2d 843 (emphasis added).

It is widely held ... that title by adverse possession may be acquired to lands within the right-of-way of a railroad company, and this is especially true as to such portions of the right-of-way as have not yet been dedicated to public use. The prevailing view seems to be that, in the absence of

a statute to the contrary, the title or easement of a railroad to land included within its right-of-way not acquired by public grant may be extinguished by adverse possession—that is, possession which, in view of all the circumstances, including the character of the railroad's title or interest and the title or interest of the other party, may be regarded as adverse.

3 Am.Jur.2d *Adverse Possession* § 276 (1986) (footnotes omitted). We note that, in railroad parlance, the term "right-of-way" has two meanings: "in one sense it is 'the strip of land upon which the track is laid'; in the other sense it is 'the legal right to use such strip.'" *Maryland & Pa. R.R. v. Mercantile–Safe Deposit and Trust Co.*, 224 Md. 34, 37 n. 1, 166 A.2d 247 (1960). In the case *sub judice*, our reference to the Georgetown Branch right-of-way employs the former meaning of the term.

■ We agree with appellants that title to land within a railroad right-of-way may be acquired through adverse possession; however, the resolution of this inquiry does not dispose of appellants' claims against the County. The record demonstrates that Parcel Nos. 2, 4, 6, 8, and 9 of the Georgetown Branch were acquired by the Railroads through an Act of Congress, approved March 3, 1891, which is codified at 26 Statutes at Large 833:

> *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Metropolitan Southern Railroad Company is hereby authorized to construct its road across the grounds of the United States forming a part of the grounds of the receiving reservoir, in Montgomery County, in the State of Maryland, north of the northeast boundary line of the District of Maryland, north of the northeast boundary line of the District of Columbia, and for that purpose said company is hereby granted a width sixty feet, at grade, and such additional width as it may require for slopes of cuttings and embankments, across said grounds for its right of way through the grounds aforesaid: *Provided,* That ... the damages for the use and occupation of the right of way

herein granted shall be fixed by a board of three Army officers appointed by the Secretary of War, and the payment of said damages so fixed shall be a condition precedent to the exercise of **the rights by this act granted, which are to terminate at the pleasure of the Secretary of War, in case of persistent neglect by said company, or by its successors, to comply with the regulations aforesaid.** (Emphasis added). The record does not clearly demonstrate, however, whether the land claimed by appellants involves these parcels.

"In Maryland, there has never been any doubt that adverse possession does not run against the State." *Central Collection Unit v. Atlantic Container Line, Ltd.*, 277 Md. 626, 629, 356 A.2d 555 (1976). "This is but an application of the maxim, *nullum tempus occurrit regi*," which means that time does not run against the sovereign. *Id.* (footnote omitted). Moreover, it is well-settled that "[p]roperty which is held in a governmental capacity or is impressed with a public trust, cannot be disposed of without special statutory authority." *Montgomery County v. Merlands Club, Inc.*, 202 Md. 279, 303, 96 A.2d 261 (1952).

Because the Railroads acquired certain parcels of the Georgetown Branch by an Act of Congress, *i.e.*, public grant, appellants cannot extinguish the Railroads' interest in these parcels by adverse possession. *Cf. Bond v. Murray*, 118 Md. 445, 452, 84 A. 655 (1912) (holding that pursuant to the Act of 1824, Chapter 79, which incorporated the Chesapeake and Ohio Canal Company, the construction of any buildings or structures "upon the land of the company whether with or without the permission of the company, however long the same may remain shall not be deemed nor held in law as an adverse possession, so as to deprive the company of its rights in or to the said lands"); *Northern Pac. Ry. v. Townsend*, 190 U.S. 267, 272, 23 S.Ct. 671, 673, 47 L.Ed. 1044 (1903) (" 'By granting a right of way 400 feet in width, Congress must be understood to have conclusively determined that a strip of that width was necessary for a public work of such importance.' ");

3 Am.Jur.2d *Adverse Possession* § 278 (1986) (and cases cited therein). Congress granted the Metropolitan Southern Railroad Company a right-of-way over "the grounds of the United States" and expressly provided that rights granted by the act could be terminated at the pleasure of the Secretary of War "in case of persistent neglect by said company." The grant to the Metropolitan Southern Railroad Company by Congress gave the company a sixty-foot-wide right-of-way over United States property and, therefore, we may presume that Congress determined that a strip of this width was necessary for the safe construction and operation of the railroad. Furthermore, in light of the rule that "time does not run against the sovereign" and the fact that the United States, not the railroad company, owns title to the land described in the Act, appellants cannot fulfill the statutory twenty-year period necessary to establish a claim of adverse possession.

Appellants contend, through affidavits, that for the statutory period of twenty years appellants have erected fences on, cultivated gardens on, or landscaped the parts of the Georgetown Branch that abut their backyards. Typically, each property owner claims title to an area of land extending ten feet into the Georgetown Branch from the property line bounding his or her backyard. Whether the Railroads actually used these portions of the Georgetown Branch that abut the backyards of appellants is disputed. The County argues that the Railroads used the entire width of the Georgetown Branch "to allow for the safe and efficient operation of trains. The safety buffer area is essential for the safety of the railroad personnel and the public at large." Appellants, on the other hand, contend that the Railroads did not use the entire right-of-way for the maintenance of its railway operations, and that the Railroads conveyed portions of the right-of-way to various parties, thereby indicating that they did not need the entire width of the right-of-way for the benefit of the public.

Contrary to the trial court's belief, the law in Maryland permits adverse possession against municipal property not devoted to a public use. The threshold issue, therefore, is

whether the portions of the Georgetown Branch that appellants claim by adverse possession involve the parcels granted to the Railroads by the Act of Congress. If the land to which appellants claim title was not acquired by the Railroads through a public grant, then it must be determined whether those portions, in which the Railroads acquired an interest in fee simple, were devoted to a public use.

### III. Railroads' Easement Interest in Right-of-Way

 Although the Railroads acquired a fee simple interest in some parcels of the Georgetown Branch, the County concedes that the Railroads merely acquired easements over other areas of the Georgetown Branch.

> "The general rule is that the right and title to a *mere* easement in land acquired by a *quasi*-public corporation, either by purchase, condemnation or prescription, for a public purpose is dependent upon the continued use of the property, and when such public use is abandoned the right to hold the land ceases, and the property reverts to its original owner or his successors in title."

*Maryland & Pa. R.R. v. Mercantile–Safe Deposit & Trust Co.*, 224 Md. 34, 41, 166 A.2d 247 (1962). In *Maryland & Pa. R.R.*, the Court of Appeals recognized that

> "It was for a trier of fact to determine whether there was a bona fide intent to preserve the right of way for actual railroad use, and the court could properly conclude that the acts and conduct of defendant were incompatible with the continued exercise of the easement, that the discontinuance of the line was not merely temporary, and that the right of way was abandoned and the easement terminated."

(*quoting People v. Ocean Shore R.R.*, 32 Cal.2d 406, 196 P.2d 570, 578 (1948)); *see also Lacy v. East Broad Top R.R. & Coal Co.*, 168 Pa.Super. 351, 77 A.2d 706, 710 (1951) (whether the railroad had actually abandoned the right of way or had indicated an intention to abandon it was a question of fact to be determined by the finder of fact).

In the case *sub judice*, the trial court erred when it determined that the right-of-way had not been abandoned because the trial court cannot resolve disputed facts on a motion for summary judgment. Appellants presented evidence that, prior to the purchase of the Georgetown Branch by the County, the Railroads had conveyed portions of the Georgetown Branch, and that parts of the Georgetown Branch, which abutted appellants' backyards, had been unused and unclaimed by the Railroads for the requisite statutory period. "[T]he burden of proving abandonment rests on the one who asserts or relies on it . . . [and] the law is well settled that the intent to abandon may be shown by the acts of a party indicating such an intention." *Maryland & Pa. R.R.*, 224 Md. at 40, 166 A.2d 247 (citations omitted). If the Railroads were granted easements over any of the portions claimed by appellants, then the issue of whether the Railroads intended to abandon those portions requires a factual determination which cannot be made on a motion for summary judgment.

In addition, the record does not conclusively demonstrate the purposes underlying the conveyances of the easements to the Railroads, but the Right–of–Way and Track Map indicates that several of the easements were granted to the Railroads for "highway purposes." If it is determined that the Railroads ceased using the property for the purpose upon which the easements were conditioned, then, depending upon the language in the deeds, title to those parcels may have reverted to the original owner or the original owner's successors in title. Consequently, the County would have acquired no interest in the property purchased from the Railroads, and appellants would, thus, be unable to assert their claims against the County, but would be required to assert their claims against the owner(s) of the reversion.

## IV. Affidavit of David Lancaster

Because we shall reverse, we need not address appellants' assertion that the trial court erred when it relied upon the affidavit of David Lancaster when it granted summary judgment in favor of the County.

As we stated, *supra*, there is no way we can tell from this record what parts of the property originally held by the Railroads were obtained as a result of a federal grant, by conveyance of fee simple, or by the grant of easements. Based on the foregoing discussion, there is also no way that the court on this record could make a determination of the issues raised in this case, let alone by way of summary judgment. Until the exact nature of the Railroads' ownership of the property and the extent of their use of the entire right-of-way is determined, there is no way to ascertain what title Montgomery County has acquired in the various parts of the right-of-way.

Based on the pleadings in this case, many of the issues required to be joined in order for the court to make the necessary findings have not been joined.

It is not the responsibility of this Court to give advice to the parties or to their counsel. It is clear to this Court that the judgment in this case should never have been granted. Where this case goes from here is up to the parties and the circuit court.

**JUDGMENT REVERSED; COSTS TO BE DIVIDED EQUALLY BETWEEN APPELLANTS AND APPELLEE.**